IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| SHENANDOAH VALLEY NETWORK, ET AL., | CIVIL ACTION NO. 3:07-CV-00066 |
| *Plaintiffs,* | |
| v. | MEMORANDUM OPINION |
| J. RICHARD CAPKA, ET AL., | |
| *Defendants.* | JUDGE NORMAN K. MOON |

This matter is before the court upon consideration of Plaintiffs' motion to alter or amend judgment (docket no. 87) and their renewed motion for leave to file a second amended complaint (docket no. 88). As set forth below, Plaintiffs have not shown grounds for amending or altering the judgment, and the record indicates that permitting the requested amendments to the complaint would be futile. Accordingly, the motions will be denied.[1]

I.

A motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e) is committed to the discretion of the Court. *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396,

---

[1] The named Plaintiffs are the Shenandoah Valley Network, Larry Allamong, the National Trust for Historic Preservation in the United States, the Coalition for Smarter Growth, the Rockbridge Area Conservation Council, the Virginia Organizing Project, Scenic Virginia, Inc.; Valley Conservation Council; Sierra Club; and APVA Preservation Virginia. Plaintiffs will be referred to collectively as "Plaintiffs." Plaintiffs named as Defendants in their official capacities the Federal Highway Administrator for the United States Department of Transportation, the Secretary of the United States Department of Transportation, and the Virginia Division Administrator of the Federal Highway Administration. The Interveners are the Commonwealth of Virginia, the Virginia Department of Transportation, and, in their official capacities, the Secretary of Transportation for the Commonwealth of Virginia and the Commonwealth Transportation Commissioner. I refer to the federal Defendants and the Interveners collectively as "Defendants."

The facts in this case were set forth in my memorandum opinion and order of September 3, 2009, granting Defendants' motion for summary judgment, denying Plaintiffs' motion for summary judgment, and striking this case from the court's active docket. Accordingly, I will reiterate facts here only as necessary.

402 (4th Cir. 1998). The Fourth Circuit recognizes "three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Id*. at 403. In effect, Rule 59(e) "permits a district court to correct its own errors, 'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings.'" *Id*. (quoting *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995)). However, "Rule 59(e) motions may not be used . . . to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Id*.

Plaintiffs argue that my opinion "did not address Plaintiffs' fully-briefed claim that the [Federal Highway Administration's] Tier 1 'decision' to narrow the range of alternatives in any future Tier 2 [National Environmental Policy Act, or "NEPA"] studies violated" the National Environmental Policy Act, 42 U.S.C. § 4321, *et seq*. Plaintiffs also claim that this Court failed to address whether the decision of the Federal Highway Administration ("FHWA") "to eliminate alternatives from consideration during any future Tier 2 NEPA studies was presently ripe for review." However, I addressed these issues. I reviewed the entire administrative record in this case and determined that Defendants' analysis of alternate improvement concepts, the selection of the variable-lane widening concept, and the elimination of other concepts was appropriate and complied with NEPA and the Administrative Procedures Act ("APA"). I also held that the Tier 1 decision to eliminate improvement concepts from further consideration during Tier 2 was ripe for review, given that "[f]inal agency decisions made at the close of a Tier 1 NEPA process are reviewable at the time the decision is rendered."

Plaintiffs also contend that granting the motion to alter or amend is necessary to prevent manifest injustice, arguing that they have not received a hearing on their claim that "FHWA's prospective elimination of less-harmful alternatives to any future Tier 2 widening project violates NEPA." Again, I addressed that issue, determining that Defendants' analysis of alternate improvement concepts and the decisions rendered concerning those concepts were compliant with NEPA and the APA.[2] Accordingly, the motion to alter or amend judgment will be denied.

## II.

### A.

Plaintiffs have also filed a renewed motion for leave to file a second amended complaint.[3] Plaintiffs' proposed amended Count I, styled as "Violation of the National Environmental Policy Act, Evaluation of Alternatives," is merely a repackaging of Count II of the first amended complaint, which was also styled as "Violation of National Environmental Policy Act, Evaluation of Alternatives," and alleged that Defendants had violated NEPA by

---

[2] I found "that Defendants' consideration of alternatives was reasonable, thorough, and compliant with the requirements of NEPA and the APA," and that

> [t]he Tier 1 ["Record of Decision" (or "ROD")] discloses an exhaustive process, spanning several years and a great array of data, evaluating the feasibility and the consequences -- including, *inter alia*, environmental and economic consequences -- of a range of alternatives, and it is clear that the FHWA gave the requisite "hard look," sufficiently "explain[ing] its course of inquiry, its analysis, and its reasoning, and show[ing] a rational connection between its decision-making process and its ultimate decision."

Quoting *Manufactured Housing Institute v. U.S. Environmental Protection Agency*, 467 F.3d 391, 399 (4th Cir. 2006) (internal quotation omitted).

[3] Plaintiffs also argue that I should alter or amend the judgment in order to resolve Plaintiffs' renewed motion to amend their complaint.

prematurely approving the Tier 1[4] "Record of Decision" (or "ROD") without waiting for the completion of the I-81 Freight Rail Study to fully assess the feasibility of multi-state rail as an alternative to the improvement concepts advanced in Tier 1. Plaintiffs specifically charged that "Defendants' failure to thoroughly evaluate the alternative of postponing approval of the Tier 1 ROD until completion of the I-81 Freight Rail Study was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law." The proposed amended Count I alleges, in relevant part:

> The FHWA's approval of the Tier 1 ROD was premature in light of the fact that VDOT is currently tasked by the Virginia General Assembly with the preparation of the I-81 Freight Rail Study to study multi-state rail as a means of diverting truck traffic off of I-81.

\* \* \*

> In light of the highly relevant information that will be afforded by the I-81 Freight Rail Study bearing on the reasonableness of a multi-state rail concept, the FHWA should have evaluated the alternative of postponing approval of the Tier 1 ROD until this study was completed.

\* \* \*

> Defendants' failure to thoroughly evaluate the alternative of postponing approval of the Tier 1 ROD until completion of the I-81 Freight Rail Study was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

\* \* \*

> To the extent that the Tier 1 ROD encompasses a final decision to eliminate alternatives and/or limit the scope of alternatives that will be considered when and if individual "Tier 2" projects are advanced on I-81 segments, this Tier 1 "decision" was arbitrary, capricious, and contrary to NEPA.

I addressed these very issues in my memorandum opinion of September 3, 2009, regarding the cross-motions for summary judgment on the first amended complaint.

---

[4] The concept of "tiering" is fully explained in my memorandum opinion of September 3, 2009.

Count III of the first amended complaint, styled as "Violation of Due Process, 42 U.S.C. §1983," charged that Defendants' publication of the Tier 1 Statute of Limitations Notice in the Federal Register "will have the effect of generally barring Plaintiffs from raising claims challenging the FHWA's failure to consider alternatives when specific I-81 projects (*i.e.*, the Sections of Independent Utility) are considered in the Tier 2 NEPA documents," and thus violated Plaintiffs' right to judicial review of those decisions. The proposed amended Count II is also styled as "Violation of Due Process, 42 U.S.C. § 1983," alleges that Defendants' publication of the Tier 1 Statute of Limitations Notice in the Federal Register

> will have the effect of generally barring Plaintiffs from raising claims challenging the FHWA's failure to consider alternatives when specific I-81 Projects (*i.e.*, the Sections of Independent Utility) are considered in the Tier 2 NEPA documents, without affording Plaintiffs notice of what specific claims will be barred at the Tier 2 stage.

Again, I addressed these very issues in my memorandum opinion of September 3, 2009, regarding the cross-motions for summary judgment on the first amended complaint.[5]

Although "Rule 15(a) declares that leave to amend shall be freely given when justice so requires," *Foman v. Davis*, 371 U.S. 178, 182 (1962), "[l]eave to amend need not be given when amendment would be futile," *In re PEC Solutions, Inc. Securities Litigation*, 418 F.3d 379, 391 (4th Cir. 2005); *see also Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613-14 (4th Cir. 1980). Plaintiffs contend that they have presented "compelling arguments in their summary judgment briefs that there is no support whatsoever in the Tier 1 administrative record for FHWA's decision to prospectively eliminate alternatives from consideration during future Tier 2 NEPA

---

[5] I also noted that, although Plaintiffs pleaded their due process claims under 42 U.S.C. § 1983, § 1983 has no application to the federal government or its officers. *See, e.g., District of Columbia v. Carter*, 409 U.S. 418, 424-25 (1973).

studies."[6] However, I found that "Defendants' consideration of alternatives was reasonable, thorough, and compliant with the requirements of NEPA and the APA." I further explained that the Tier 1 ROD appropriately set forth the rationale for the decision to advance the variable-lane widening concept and that the Tier 1 Final Environmental impact Statement ("FEIS") "provides in-depth descriptions of each alternate improvement concept considered and explains why all but the selected improvement concepts failed to meet the purpose and need of the I-81 study." Although my previous opinion specifically addressed the issues presented in the cross-motions for summary judgment, my findings regarding the legality of the Tier 1 alternatives analysis and the reasonableness of the Defendants' decision to advance the variable-lane widening concept and reject all other concepts from further consideration during Tier 2 apply also to the questions plaintiffs seek to present in their second amended complaint. I found that Defendants complied with NEPA regarding these issues; accordingly, further NEPA challenges to the decision to reject certain alternate improvement concepts from consideration at Tier 2 are futile.

**B.**

On October 10, 2008, the parties filed a Stipulation and Agreement (docket no. 56, hereinafter the "Agreement") with this court for the following purposes: identifying "those decisions which constitute 'final agency action' as a result of the Tier 1 NEPA process and which cannot be challenged after December 17, 2007"; to "preserve the plaintiffs' right to

---

[6] Plaintiffs attempt to couch their arguments in a new term, "prospective elimination of alternatives." However, as I observed in my memorandum opinion on the cross-motions for summary judgment, the Tier 1 Final Environmental Impact Statement ("FEIS") and ROD identified a wide range of improvement concepts and determined that only the variable lane-widening concept would be advanced to Tier 2, and all other concepts were rejected. There was nothing "prospective" or premature about the Tier 1 decision to eliminate certain improvement concepts from further consideration at Tier 2. I observed that Tier 1 decisions will be advanced and form the basis of Tier 2 analyses, but that, "if substantial new information arises that is material to these decisions," they may need to be revisited during Tier 2.

challenge those decisions which are made at the end of the Tier 2 NEPA process"; and to "eliminate or narrow counts in the pending litigation or settle the entire matter."  The Agreement included a Stipulation of Dismissal with prejudice as to Count I and paragraphs 54 to 58, inclusive, of the first amended complaint. Long after the entry of the Agreement dismissing Count I with prejudice, Plaintiffs filed a motion for summary judgment that, notwithstanding the dismissal, advanced many of the NEPA claims that had been contained in Count I.  Defendants' response in opposition to Plaintiffs' motion for summary judgment pointed out that Plaintiffs had raised many of the claims contained in Count I, and the parties argued whether, in light of the Agreement, these arguments could be considered.  In view of the dismissal of Count I, I determined in my memorandum opinion of September 3, 2009, that the remaining issues were limited to those set out in Counts II and III of the first amended complaint.  However, I did not, as Defendant argued I should, parse Plaintiffs' arguments, excising the impermissible from the permissible.

      Count I of the first amended complaint was styled as "Violation of National Environmental Policy Act, Evaluation of Alternatives, Impacts," challenged Defendants' use of tiering in the development of the I-81 improvement plan, alleging that the tiering concept is a subterfuge to avoid compliance with NEPA.  Plaintiffs charged that a multi-state rail improvement concept was a reasonable alternative that Defendants failed to thoroughly evaluate, and that improvement concepts such as "the TSM alternative and/or targeted safety improvements, local land use and local road improvements . . . should have been advanced to the Tier 2 stage."  Plaintiffs asserted that Defendants failed to "take the requisite 'hard look' at direct, indirect, and cumulative impacts on historic properties, and on human health and the environment, including Shenandoah National Park, from air pollution" as well as the project's

contribution to global warming and oil dependence. Although this specific count was dismissed, I nonetheless addressed these questions, as already noted, and found "that the FHWA gave the requisite 'hard look,' sufficiently 'explain[ing] its course of inquiry, its analysis, and its reasoning, and show[ing] a rational connection between its decision-making process and its ultimate decision.'" Quoting *Manufactured Housing Institute v. U.S. Environmental Protection Agency*, 467 F.3d 391, 399 (4th Cir. 2006) (internal quotation omitted).

Although Plaintiffs dismissed their NEPA challenge to the sufficiency of the Tier 1 analysis of environmental impacts, Plaintiffs now argue that Defendants are unlikely to consider new and material information concerning environmental consequences during Tier 2 NEPA analyses. However, I previously observed, *inter alia*, that the decision to eliminate certain improvement concepts from further consideration at Tier 2 may be required to be revisited "if site-specific Tier 2 impacts analyses show that the variable-lane widening alternatives under consideration within a specific [section of independent utility] are environmentally unfeasible." (Citation omitted.) This additional review at Tier 2 is provided for by the laws, which I discussed in my previous opinion, that govern Tier 2. I further explained that "the Tier 1 ROD reflects that other environmental laws and regulations may require the reconsideration of alternatives" and that, "[i]n fact, the parties agree that the Tier 1 decision will be reconsidered on the basis of substantial, new, and material information, and that the SOL notice does not exclude from further review any Tier 1 decisions that merit reconsideration at Tier 2 on the basis of such information." Accordingly, Plaintiffs' arguments are without merit.

## C.

In sum, a second amendment of the complaint would be futile, given that I have already addressed the issues Plaintiffs raise. In light of my previous finding that "Defendants'

consideration of alternatives was reasonable, thorough, and compliant with the requirements of NEPA and the APA," it would be futile to amend the complaint to include allegations that Defendants' decisions made in the Tier 1 ROD to eliminate certain alternatives from further consideration during Tier 2 violate NEPA.  Similarly, it would be futile to permit the due process challenges Plaintiffs raise regarding the decision to eliminate these alternatives from further consideration, given that they also have already been addressed.

### III.

For the stated reasons, Plaintiffs' motion to alter or amend judgment (docket no. 87) and their renewed motion for leave to file a second amended complaint (docket no. 88) will be denied.

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this 17th day of June, 2010.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE